# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| HILLARY WHITE and LYNN MICHALSON, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07-cv-9418 (DAB) ECF Case |
| v. | ) ) ) | |
| AURORA DAIRY CORP., d/b/a Aurora Organic Dairy; | ) ) ) | |
| | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiffs HILLARY WHITE and LYNN MICHALSON, individually and on behalf of all others similarly situated, for their complaint against defendant, upon knowledge as to their own acts, and upon information and belief as to all other matters, allege the following:

## NATURE OF ACTION

1.      This complaint arises from the unlawful conduct of defendant AURORA DAIRY CORP., d/b/a Aurora Organic Dairy (hereinafter referred to as "Defendant") to commit unlawful, unfair and deceptive practices to produce, market, and sell "organic" milk at prices much higher than normal non-organic milk to consumers, when Defendant knew or should have known the "organic" milk did not comply with Federal guidelines for labeling milk "organic" from January 1, 2003 to September 7, 2007 (hereinafter the

"Class Period"). Defendant's conduct was deceptive and unfair to consumers who purchased allegedly "organic" milk from retail stores.

2.      As a direct result of Defendant's unlawful, unfair and/or deceptive conduct, Plaintiffs and the class members have been damaged by paying a premium price for "organic" milk, when all the while, the milk that was actually being sold to them was ordinary non-organic milk that normally sells at much lower prices than organic milk.

3.      Plaintiffs, on their own behalf and on behalf of the class defined below, seek to recover for their injuries and those to the Class. Plaintiffs also seek injunctive and declaratory relief and costs, including reasonable attorneys' fees.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction pursuant to 28 USC §1332(d), in that this is a class action in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed class are citizens of a different state than that of the Defendant. This Court has personal jurisdiction over the Defendant because it was engaged in unfair and deceptive practices that were directed at, and/or caused injury to, persons and entities residing in, located in, or doing business in this District and throughout the United States.

5.      Venue is proper in this judicial district pursuant to 15 U.S.C. § 28 and U.S.C. § 1391(a),(b) and (c) because the Defendant resides, or is licensed to do business or is doing business, or is found or transacts business in this district and/or the claims arose in this district.

## PARTIES

6.      Plaintiff Hillary White ("Plaintiff") resides in the Bronx, New York. During the Class Period, she purchased the alleged "organic milk" from a retail store supplied by the Defendant.

7.      Plaintiff Lynn Michalson ("Plaintiff") resides in New York City, New York. During the Class Period she purchased the alleged "organic" milk from a food delivery service supplied by the Defendant.

8.      Defendant AURORA DAIRY CORP. d/b/a Aurora Organic Dairy is a corporation with its principal place of business in Boulder, Colorado. AURORA DAIRY CORP. conducts business throughout the United States, including in the State of New York and it has purposely availed itself of the laws of the Consumer Protection States as defined herein.

9.      During the Class Period, Defendant sold "organic certified" labeled milk to retail outlets for consumer purchase throughout the United States, including this district.

## FACTUAL ALLEGATIONS

### Background

10.      Organic milk is sold as an alternative to ordinary milk, it is produced in a way that is more humane to the dairy cows, and is purported to produce a healthier and more nutritious product without the use of chemicals or steroids. In turn, for the greater care that is federally mandated for the production of organic products, the price is more than double the price of the ordinary non-organic milk produced and sold.

3

11.     The Federal Government mandates what is required from a producer of organic products in order to place an organic certified product label in compliance with the Organic Foods Production Act of 1990 (OFPA), as amended (7 U.S.C. 6501 et seq.), and the implementing regulations thereunder (7 CFR Part 205).

12.     The United States Department of Agriculture (USDA) inspects and regulates human food products and milk products are directly under the USDA regulation in the United States.

13.     Defendant has an organic certified label on its organic milk products sold in the United States. This label certified that the Defendant is in compliance with the Organic Foods Production Act of 1990 (OFPA), as amended (7 U.S.C. 6501 et seq.), and the regulations thereunder (7 CFR Part 205).

14.     Plaintiffs purchased Horizon Organic milk during the class period, from a retail outlet that was supplied by Defendant and from Fresh Direct, a food delivery service.

15.     Plaintiff paid more than double the price for the organic milk compared to ordinary non-organic milk.

16.     Defendant entered the market in 2003, and is the United States leading producer of private label organic milk and store brands of organic milk for stores that include Wal-Mart, Costco, Target Safeway, Wild Oats, Publix, and approximately 20 other stores throughout the United States.

17.     Defendant sells milk to other stores under their own store national brands namely, Horizon Organic and Organic Valley brands.

4

18.    Defendant has dairy farms in Colorado and Texas, and processes all of its milk in Colorado.

19.    Defendant sells the organic milk for more than other producers, in part because it does not follow federally mandated rules for labeling a product as organic and sells and certifies non-organic milk as "organic".

### Government Investigations and Orders Instituted Against Defendant for Decertification of Organic Products Produced by Defendant

20.    Defendant, upon information and belief, has engaged in activities which violate standards set forth in the Organic Foods Production Act of 1990 (OFPA), as amended (7 U.S.C. 6501 et seq.), and the regulations thereunder (7 CFR Part 205).

21.    On April 16, 2007 the USDA, through the National Organic Program's (NOP) Office of Compliance, entered an order (attached as exhibit A) and found 14 different violations by Defendant, each of which is incorporated by reference as if stated here. See Exhibit A.

22.    The Order proposes an immediate revocation of Defendant's organic certification, subject to the appeals process.

### Defendant's Unlawful Conduct

23.    During the Class Period, Defendant engaged in unfair and deceptive practices, by continually purporting to be a certified organic milk producer, when, all the while, Defendant knew, or should have known that they were not in compliance with Federal standards.  As a result of this deception, consumers were paying extra for "organic" milk when all the while the Defendant was producing ordinary non-organic milk which can be purchased for far less, but for Defendant's illegal conduct.

24.     Defendant further engaged in unfair, deceptive, and undisclosed acts or practices as alleged herein causing Plaintiffs and the Class Members (defined below) to pay higher prices than they would otherwise have paid in the absence of the Defendant's alleged illegal, unfair and deceptive conduct.

25.     Defendant still, after the investigations by the USDA and private watchdog groups, certified that the milk being produced by it was organic. These undisclosed and deceptive acts had the effect of causing consumers to pay and continue to pay artificially higher prices for non-organic milk they thought was organic certified. The USDA and Defendant entered into a Consent Agreement with a stipulation for probation (attached as Exhibit B). Exhibit B is incorporated by reference as if stated herein. (See Exhibit B.)

26.     The USDA found that Defendant violated organic regulation and that any milk produced after 9-7-2007 from animals referenced in paragraph 7(a) of Exhibit B shall not be sold as organic. The Consent Agreement acknowledges that the Defendant did not comply with Federal organic food regulations in the past, and sets forth a probationary period of one year. It also includes a list of issues the Defendant must address and comply with for its organic certification not to be revoked.

27.     In an article from The Denver Business Journal dated August 30, 2007, it states "Under a consent agreement signed by the USDA's Agricultural Marketing Service (AMS) and Aurora, if its requirements aren't met, the AMS could revoke the organic certification for Aurora's Platteville operation, the USDA said." And later in the same article "In 2005 and 2006, the agency received complaints from The Cornucopia Institute in Wisconsin claiming that Aurora fed its dairy animals in feedlots instead of grazing

6

them on pasture land as organic regulations require. The agency also found the dairy wasn't following rules regarding transitioning animals to the organic operation and didn't have adequate records, according to the USDA." The *USDA-Aurora Organic Dairy settlement includes probation*, The Denver Business Journal dated August 30, 2007.

## INTERSTATE TRADE AND COMMERCE

28.    During the period of time covered by this Complaint, Class members throughout the United States, including in New York, purchased Defendant's organic certified milk from various retail outlets and other sources.    In addition, Defendant regularly conducts business and sells organic milk within the United States.

29.    The restraints hereinafter alleged have directly and substantially affected interstate commerce in that Defendant has deprived Plaintiffs and the Class of the benefits of free and open competition with respect to the sale of organic milk within the United States.

## PLAINTIFFS' INJURY

30.    Plaintiffs and the Class members have been damaged as a direct, foreseeable, and proximate result of Defendant's' misconduct.    Plaintiffs and the Class members have been forced to pay artificially high prices for organic certified milk that should be labeled non-organic milk, as a direct and proximate result of Defendant's conduct.

## CLASS ACTION ALLEGATIONS

31.    Plaintiffs bring this action as a Class action pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of a Class consisting of: all persons or entities who purchased organic milk produced by Defendant in the Consumer Protection States

(defined below) or the United States during the Class Period. The Class excludes Defendant, any co-conspirators and their parents, subsidiaries, affiliates, officers, directors, and employees. Also excluded are any federal, state or local governmental entity, and any judge or judicial officer presiding over this matter, judicial staff and the members of their immediate families.

32.    For purposes of the Complaint and class definition, the "Consumer Protection States" are Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Indiana, Kansas, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, and Wyoming.

33.    The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, the members of the Class are geographically dispersed throughout the Consumer Protection States and the entire United States. While the exact number of the members of the Class is unknown to Plaintiffs at this time, Plaintiffs believe, based on the sales volume of Defendant produced organic milk, that there are hundreds of thousands or more members of the Class.

34.    Plaintiffs' claims are typical of the claims of the other members of the Class they seeks to represent. Defendant's illegal and inequitable methods, acts and trade practices have targeted and affected all members of the Class in a similar manner, *i.e.*, they have been systematically overpaying for non-organic milk wrongly labeled as

organic. Plaintiffs and members of the Class they seek to represent have all sustained damages arising out of Defendant's conduct in violation of the applicable statutes of the Consumer Protection States, and Common law, as complained of herein.

35.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    Whether the alleged conduct violated the Consumer Protection States' laws as alleged in Count I herein;

(b)    Whether Plaintiffs and the Class have a claim for unjust enrichment;

(c)    The duration and extent of any such violations or unlawful conduct alleged herein;

(d)    The amount by which Defendant's illegal, inequitable and unfair trade practices have inflated the prices paid by members of the Class for organic milk produced by Defendant over the amounts they would otherwise have paid for ordinary non-organic milk in a competitive market unaffected by Defendant's illegal acts; and

(e)    Whether Defendant's conduct caused injury to Plaintiffs and the Class members they seek to represent, and, if so, the proper measure of such damages.

36.    Plaintiffs' claims are typical of those of the Class they represent because they and all of the Class members were injured in the same manner by Defendant's illegal, deceptive, and unfair methods, acts and practices and wrongful conduct in the

conspiracy complained of herein, *i.e.*, they have paid supra-competitive prices for milk wrongfully labeled "organic".

37.    Plaintiffs will fully and adequately protect the interests of all members of the Class. Plaintiffs have retained counsel who is experienced in class action and consumer protection litigation. Plaintiffs have no interests which are adverse to or in conflict with other members of the Class.

38.    The questions of law and fact common to the members of the Class predominate over any questions which may affect only individual members.

39.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

40.    The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the individual class members may be relatively small and therefore the expense and burden of individual litigation make it

virtually impossible for them to redress the wrongs done to them.  Plaintiffs anticipate no difficulty in the management of this action as a class action.

### FRAUDULENT CONCEALMENT

41.    The running of any statute of limitations has been suspended with respect to any claims which the Plaintiffs and the other members of the Class have sustained as a result of the unlawful, deceptive, and secretive conduct of Defendant alleged herein and with respect to their rights to injunctive relief by virtue of the federal doctrine of fraudulent concealment.

### COUNT I

### Violation of State Consumer Protection Statutes

42.    Plaintiffs re-allege and incorporate by reference all of the allegations of this Complaint with the same force and effect, as if fully restated herein.

43.    The unfair and deceptive practices of the Defendant as alleged above, included but are not limited to Defendant's intentionally mis-certifying a product as "organic", when the Defendant knew that they did not follow Federally mandated rules regarding certification as an organic food(all unknown to the general consumer public). Defendant followed these deceptive practices for many years which resulted in higher consumer prices for milk illegally purported to be "organic" by Defendant.

44.    Some of Defendant's deceptive practices that  were in place for many years in the industry are as follows:

> a. Defendant unfairly and deceptively certified a product as organic and was garnering a premium price for an ordinary product available for far less.

11

b. In doing this, the Defendant would have an incentive to recommend organic products that was not in the customer's best interests, but in the Defendant's financial best interests.

45.    Defendant's acts as described above are in violation of the following state Consumer Protection statutes:

(a)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522 et seq.

(b)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Ark. Code § 4-88-101 et seq.

(c)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200 et seq.

(d)    Defendant has engaged in unfair competition, deceptive acts or practices or has made false representations in violation of Colo. Rev. Stat. § 6-1-105 et seq.

(e)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b et seq.

(f)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of 6 Del. Code § 2511 et seq.

(g)    Defendant has engaged in unfair competition, deceptive acts or practices or made false representations in violation of D.C. Code Ann. § 28-3901 et seq.

(h)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Fla. Stat. § 501.201 et seq.

(i)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Haw. Rev. Stat. § 480 et seq.

12

(j)     Defendant has engaged in unfair competition, deceptive acts or practices in violation of Idaho Code § 48-601 et seq.

(k)     Defendant has engaged in unfair competition, deceptive acts or practices in violation of 815 ILCS § 505.1 et seq.

(l)     Defendant has engaged in unfair competition, deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1 et seq.

(m)     Defendant has engaged in unfair competition, deceptive acts or practices in violation of Kan. Stat. Ann. § 50-623 et seq.

(n)     Defendant has engaged in unfair competition, deceptive acts or practices in violation of Md. Com. Law Code § 13-101 et seq.

(o)     Defendant has engaged in unfair competition, deceptive acts or practices in violation of Mass. Gen. L. Ch 93A et seq.

(p)     Defendant has engaged in unfair competition, deceptive acts or practices in violation of Mich. Stat. § 445.901 et seq.

(q)     Defendant has engaged in unfair competition, deceptive acts or practices in violation of Minn. Stat. § 8.31 et seq.

(r)     Defendant has engaged in unfair competition, deceptive acts or practices in violation of Mo. Ann. Stat. § 407.010 et seq.

(s)     Defendant has engaged in unfair competition, deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601 et seq.

(t)     Defendant has engaged in unfair competition, deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903 et seq.

(u)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1 et seq.

(v)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of violation of N.J. Rev. Stat. § 56:8-1 et seq.

(w)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of N.M. Stat. § 57-12-l et seq.

(x)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349 et seq.

(y)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of N.C. Gen. Stat. §§ 75-1.1 et seq.

(z)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01 et seq.

(aa)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01 et seq.

(bb)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Okla. Stat. 15 § 751 et seq.

(cc)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Or. Rev. Stat. § 646.605 et seq.

(dd)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of 73 Pa. Stat. § 201-1 et seq.

(ee)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.l-1 et seq.

14

(ff)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of S.C. Code Laws § 39-5-10 et seq.

(gg)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of S.D. Code Laws § 37-241 et seq.

(hh)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Tenn. Code Ann. § 47-18-101 et seq.

(ii)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41 et seq.

(jj)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Utah Code § 13-11-1 et seq.

(kk)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Vt. Stat. § 2451 et seq.

(ll)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010 et seq.

(mm)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of W. Va. Code § 46A-6-101 et seq.

(nn)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Wis. Stat § 100.18 et seq.

(oo)    Defendant has engaged in unfair competition, deceptive acts or practices in violation of Wyo. Stat. § 40-12-100 et seq.

46.    Plaintiffs and the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial.

47.    Defendant's willful and unlawful conduct allow Plaintiffs and the Class to seek attorneys' fees in the Consumer Fraud States where they are allowed by law. Therefore, Plaintiffs and the Class seek attorneys' fees where they are allowed by law.

**COUNT II**

**Unjust Enrichment**

48.    Plaintiffs re-allege and incorporate by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

49.    Defendant benefited greatly from overpayments caused directly from its unlawful, unfair and deceptive acts as described above.  It would be inequitable for Defendant to retain the benefit of these overpayments that were conferred by Plaintiffs and the Class.

48.    Plaintiffs and the Class are entitled to return of these overpayments caused by the willful acts of the Defendant either as damages or restitution.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiffs respectfully demand a trial by jury.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs and the Class request as follows:

(a)    that this Court declare, adjudge, and decree this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

(b)    that this Court declare, adjudge, and decree that Defendant has committed violations of consumer protection laws;

(c)     that this Court declare, adjudge and decree that Defendant has been

unjustly enriched;

(d)     that this Court award Plaintiffs and the Class their actual damages for

Defendant's violation of Consumer Protection States' laws, in an amount

to be determined at trial;

(e)     that the Plaintiffs and each and every member of the Class recover

damages, as provided by law, determined to have been sustained by each

of them, and that the judgments in favor of Plaintiffs and each and every

member of the Class, respectively, be entered against the Defendant, in an

amount to be in accordance with Consumer Protection States' laws;

(f)     that the Defendant be enjoined from continuing the unlawful conduct;

(g)     that this Court grant Plaintiffs and the Class the actual costs in prosecuting

this action, together with interest and reasonable attorney's fees and costs;

(h)     that this Court award Plaintiffs and the Class the return of overpayments

made by them;

(i)     that this Court grant such further and other relief as it deems just and

proper.

DATED:      New York, New York
            October 19, 2007

LOVELL STEWART HALEBIAN LLP

By: _____

Christopher Lovell
Craig Essenmacher
Keith Essenmacher
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 608-1900
Facsimile: (212) 719-4677

*Attorneys for Plaintiffs and the Class*

# Exhibit A



United States          Agricultural       **STOP 0268 – Room 4008-S**
Department of          Marketing          **1400 Independence Avenue, SW.**
Agriculture            Service            **Washington, D.C. 20250-0268**

APR 16 2007

## NOTICE OF PROPOSED REVOCATION

Mr. Marc Peperzak
CEO, Aurora Organic Dairy
1401 Walnut Street, Suite 500
Boulder, Colorado 80302-5332

Dear Mr. Peperzak:

On November 9, 2005, the Cornucopia Institute filed a complaint with the National Organic
Program's (NOP) Office of Compliance. The complaint alleged violations of the NOP regulations
by Aurora Organic Dairy of Boulder, Colorado.

During the course of our investigation of Aurora Organic Dairy, we identified willful violations of
the Organic Foods Production Act of 1990 (OFPA), as amended (7 U.S.C. 6501 *et seq.*), and the
regulations thereunder (7 CFR Part 205), by Aurora Organic Dairy. The violations are listed in the
enclosed document, Aurora Organic Dairy, Case No. M-005-06, Violations by Aurora Organic
Dairy, dated March 7, 2007.

Due to the nature and extent of these violations, the NOP proposes to revoke Aurora Organic
Dairy's production and handling certifications under the NOP. This proposal is for purposes of
informal resolution of this matter, and does not necessarily reflect all the relief the Agency would
seek if this matter is formally adjudicated. Unless this action is appealed as provided below,
revocation will be effective 30 days from receipt of this letter. If the NOP revokes Aurora Organic
Dairy's production and handling certifications, the operation and all persons responsibly connected
with the operation will be ineligible to receive certification for a period of 5 years following the date
of revocation.

Aurora Organic Dairy has the right to file an appeal of this proposed action within 30 days of
receipt of this letter pursuant to §205.681 of the NOP regulations. The appeal must include a copy
of this notice and a statement of your reasons for believing that the decision is not proper or made
in accordance with applicable NOP regulations, policies, or procedures. The appeal must be filed in
writing and addressed to:

> Administrator, USDA, AMS
> C/o NOP Appeals Staff, Stop 0203
> Room 302-Annex
> 1400 Independence Avenue, S.W.
> Washington, D.C. 20250-0203

Mr. Marc Peperzak
Page 2

If you have questions regarding this proposed action or how to file an appeal, you may contact me
by e-mail at mark.bradley@usda.gov or by telephone at (202) 720-3252.

Sincerely,

Mark Bradley

Mark A. Bradley
Associate Deputy Administrator
National Organic Program

Enclosure - Aurora Organic Dairy, Case No. M-005-06, Violations by Aurora Organic Dairy, dated
March 7, 2007

# AURORA ORGANIC DAIRY
## Case No. M-005-06
### Violations by Aurora Organic Dairy

1. From 2003 through 2006, for dairy animals at its Platteville, Colorado, facility, Aurora Organic Dairy (AOD), failed to provide a total feed ration that included pasture, failed to establish and maintain pasture conditions appropriate for minimizing the occurrence and spread of diseases and parasites, and failed to establish and maintain access to pasture, in willful violation of 7 C.F.R. §§ 205.237(a), 205.238(a)(3) and 205.239(a)(2).

2. During the spring and early summer of 2006, AOD entered conventional dairy animals into organic milk production at its Dublin, Texas, facility before they completed the required one-year period of continuous organic management, which began sometime after September 30, 2005, in willful violation of 7 C.F.R. § 205.236(a)(2).

3. From 2003 through 2006, AOD purchased for its Platteville facility, from Promiseland Livestock in Falcon, Missouri, dairy animals that had been converted from conventional to organic milk production, and thus had not been under continuous organic management from at least the last third of gestation, in willful violation of 7 C.F.R. § 205.236(a)(2)(iii).

4. From on or about July 10, 2004, through on or about September 28, 2005, AOD routinely moved organic dairy animals from its certified Platteville facility to Wells Ranch in Gill, Colorado, a non-organic (non-certified) livestock operation, for management, and thereafter returned them to the Platteville facility for organic dairy production, in willful violation of 7 C.F.R. §§ 205.236(b)(1).

5. From February 2005 through March 2006, AOD moved organic calves from its certified Platteville facility to non-organic (non-certified) livestock operations for management, and eventually returned them to the Platteville facility for organic dairy production, in willful violation of 7 C.F.R. §§ 205.236(a)(2)(iii) and 205.236(b)(1).

6. From 2003 through 2006, AOD used non-organic agricultural products, such as wheat straw and corn stalks, as bedding for organic dairy animals at its Platteville facility, and, in 2006, at its Woodward facility in Windsor, Colorado, in willful violation of 7 C.F.R. § 205.239(a)(3).

7. From on or about July 27, 2004, through on or about September 30, 2005, AOD routinely caused organic dairy animals from Promiseland Livestock, a certified organic operation, to be delivered to Wells Ranch, a non-organic (non-certified) livestock operation, for livestock management, before having them delivered to AOD's Platteville facility for organic dairy production, in willful violation of 7 C.F.R. § 205.236(b)(1).

1

8. From December 5, 2003, to the present, AOD sold, labeled and represented milk as organically produced, when such milk was not produced and handled in accordance with the National Organic Program (NOP) regulations (7 C.F.R. part 205), in willful violation of 7 C.F.R. §§ 205.102, 205.200 and 205.400(a).

9. From on or about October 29, 2003, through on or about March 9, 2006, AOD failed to notify its certifying agent immediately concerning changes to the operation of its Platteville facility, regarding the termination and utilization of off-site facilities, such as Wells Ranch, contracted by AOD to provide pasture and/or livestock management services, in willful violation of 7 C.F.R. § 205.400(f)(2).

10. AOD failed to include a summary statement, supported by documentation, in the December 29, 2004, and December 28, 2005, Organic System Plans (OSPs) for its Platteville facility that detailed changes to the previous year's OSP regarding the termination and utilization of off-site facilities, such as Wells Ranch, contracted by AOD to provide pasture and/or livestock management services, in willful violation of 7 C.F.R. § 205.406(a)(1)(i).

11. From 2004 through 2006, AOD failed to maintain adequate records that disclosed all activities and transactions in sufficient detail as to be readily understood and audited and to demonstrate compliance with the OFPA and NOP regulations concerning pasture arrangements with operations identified by AOD in its annual OSP for its Platteville facility, in willful violation of 7 C.F.R. § 205.103(b).

12. In the October 29, 2003, and December 29, 2004, OSPs for its Platteville facility, AOD failed to include a full description of the practices and procedures to be performed by Wells Ranch, in willful violation of 7 C.F.R. § 205.201(a)(1).

13. In the December 28, 2005, OSP for its Platteville facility, AOD failed to include a full description of the practices and procedures to be performed by Matsuda Farms, Salazar, Cockroft Dairy Farm, and Ray-Glo Dairy, as well at its Woodward facility, in willful violation of 7 C.F.R. § 205.201(a)(1).

14. In the October 29, 2003, December 29, 2004, and December 28, 2005, OSPs for its Platteville facility, AOD failed to include a full description of the monitoring practices and procedures to be performed and maintained to verify that its OSPs were effectively implemented with respect to off-site operations contracted by AOD to provide pasture and/or livestock management services, in willful violation of 7 C.F.R. § 205.201(a)(3).

March 7, 2007

*§ 205.2 Terms defined.*

*Pasture.* Land used for livestock grazing that is managed to provide feed value and maintain or improve soil, water, and vegetative resources.

*§ 205.102 Use of the term, "organic."*

*Any agricultural product that is sold, labeled, or represented as "100 percent organic," "organic," or "made with organic (specified ingredients or food group(s))" must be:*

*(a) Produced in accordance with the requirements specified in § 205.101 or §§ 205.202 through 205.207 or §§ 205.236 through 205.239 and all other applicable requirements of part 205; and*

*(b) Handled in accordance with the requirements specified in § 205.101 or §§ 205.270 through 205.272 and all other applicable requirements of this part 205.*

*§ 205.103 Recordkeeping by certified operations.*

*(b) Such records must:*

*(1) Be adapted to the particular business that the certified operation is conducting;*

*(2) Fully disclose all activities and transactions of the certified operation in sufficient detail as to be readily understood and audited;*

*(3) Be maintained for not less than 5 years beyond their creation; and*

*(4) Be sufficient to demonstrate compliance with the Act and the regulations in this part.*

*§ 205.200 General.*

*The producer or handler of a production or handling operation intending to sell, label, or represent agricultural products as "100 percent organic," "organic," or "made with organic (specified ingredients or food group(s))" must comply with the applicable provisions of this subpart. Production practices implemented in accordance with this subpart must maintain or improve the natural resources of the operation, including soil and water quality.*

*§ 205.201 Organic production and handling system plan.*

*(a) The producer or handler of a production or handling operation, except as exempt or excluded under § 205.101, intending to sell, label, or represent*

*agricultural products as "100 percent organic," "organic," or "made with organic (specified ingredients or food group(s))" must develop an organic production or handling system plan that is agreed to by the producer or handler and an accredited certifying agent. An organic system plan must meet the requirements set forth in this section for organic production or handling. An organic production or handling system plan must include:*

*(1) A description of practices and procedures to be performed and maintained, including the frequency with which they will be performed;*

*(3) A description of the monitoring practices and procedures to be performed and maintained, including the frequency with which they will be performed, to verify that the plan is effectively implemented.*

*§ 205.236 Origin of livestock.*

*(a) Livestock products that are to be sold, labeled, or represented as organic must be from livestock under continuous organic management from the last third of gestation or hatching: Except, That:*

*(2) Dairy animals. Milk or milk products must be from animals that have been under continuous organic management beginning no later than 1 year prior to the production of the milk or milk products that are to be sold, labeled, or represented as organic, Except,*

*(i) That, crops and forage from land, included in the organic system plan of a dairy farm, that is in the third year of organic management may be consumed by the dairy animals of the farm during the 12-month period immediately prior to the sale of organic milk and milk products; and*

*(ii) That, when an entire, distinct herd is converted to organic production, the producer may, provided no milk produced under this subparagraph enters the stream of commerce labeled as organic after June 9, 2007: (a) For the first 9 months of the year, provide a minimum of 80-percent feed that is either organic or raised from land included in the organic system plan and managed in compliance with organic crop requirements; and (b) Provide feed in compliance with §205.237 for the final 3 months.*

*(iii) Once an entire, distinct herd has been converted to organic production, all dairy animals shall be under organic management from the last third of gestation.*

*(b) The following are prohibited:*

*(1) Livestock or edible livestock products that are removed from an organic operation and subsequently managed on a nonorganic operation may not be sold, labeled, or represented as organically produced.*

4

*§ 205.237 Livestock feed.*

*(a) The producer of an organic livestock operation must provide livestock with a total feed ration composed of agricultural products, including pasture and forage, that are organically produced and, if applicable, organically handled: Except, That, nonsynthetic substances and synthetic substances allowed under § 205.603 may be used as feed additives and supplements.*

*§ 205.238 Livestock health care practice standard.*

*(a) The producer must establish and maintain preventive livestock health care practices, including:*

*(3) Establishment of appropriate housing, pasture conditions, and sanitation practices to minimize the occurrence and spread of diseases and parasites.*

*§ 205.239 Livestock living conditions.*

*(a) The producer of an organic livestock operation must establish and maintain livestock living conditions which accommodate the health and natural behavior of animals, including:*

*(2) Access to pasture for ruminants;*

*(3) Appropriate clean, dry bedding. If the bedding is typically consumed by the animal species, it must comply with the feed requirements of § 205.237.*

*§ 205.400 General requirements for certification.*

*A person seeking to receive or maintain organic certification under the regulations in this part must:*

*(a) Comply with the Act and applicable organic production and handling regulations of this part;*

*(f) Immediately notify the certifying agent concerning any:*

*(2) Change in a certified operation or any portion of a certified operation that may affect its compliance with the Act and the regulations in this part.*

*§ 205.406 Continuation of certification.*

5

*(a) To continue certification, a certified operation must annually pay the certification fees and submit the following information, as applicable, to the certifying agent:*

*(1) An updated organic production or handling system plan which includes:*

*(i) A summary statement, supported by documentation, detailing any deviations from, changes to, modifications to, or other amendments made to the previous year's organic system plan during the previous year.*

6

# Exhibit B

## CONSENT AGREEMENT
### M-005-06

THIS CONSENT AGREEMENT is entered into pursuant to 7 U.S.C. §§ 6501-6523
(OFPA) and 7 C.F.R. part 205 (National Organic Program (NOP) regulations) by the United
States Department of Agriculture. Agricultural Marketing Service (AMS), and Aurora Organic
Dairy and its responsibly connected persons (AOD) (or. collectively, the parties). It is the sole
agreement between the parties and supersedes all other communications regarding the April 16,
2007, notice referred to herein.

#### CONSENT FINDINGS

1) AOD currently has eight valid organic certifications under the NOP.

2) On April 16, 2007. AMS served on AOD a Notice of Proposed Revocation (hereinafter
   the notice) that focused primarily on production practices at AOD's Platteville, Colorado,
   operation.

3) AOD operated its Platteville certified organic dairy livestock facility at all times material
   hereto under organic system plans (OSPs) and certifications issued by the Colorado
   Department of Agriculture, acting as an accredited certifying agent of AMS.

4) The inconsistencies between AOD's OSPs and the NOP regulations alleged in the notice
   are fully addressed through this agreement.

5) The parties wish to settle their differences with respect to the allegations in the notice
   pursuant to the provisions set forth below in paragraphs six through fourteen. AOD
   agrees to submit and implement amended OSPs in accordance with the terms of this
   agreement and to comply with all applicable NOP regulations, and AMS agrees that the
   notice is dismissed with prejudice.

#### CONSENT TERMS AND CONDITIONS

6) On or before September 7, 2007. AOD shall file an amended OSP for its Platteville
   operation.

7) The amended OSP for Platteville shall provide that. on or before October 15, 2007:

   a. the certified organic dairy animals currently present at Platteville that transitioned
      under the "80/20 rule" shall be retired and removed. and each one shall be sold or
      otherwise utilized as a conventional animal and not be relocated to any AOD
      certified operation;

   b. all dairy animals incorporated into the Platteville organic milking herd shall be
      under continuous organic management from the last third of gestation;



    c.  all dairy animals, whether lactating or dry, shall receive daily access to pasture during the growing season, typically from May 1 through September 30, in accordance with current or amended NOP regulations:

    d.  the lactating organic milking cows at Platteville shall have access to pasture at a grazing density that does not exceed four animals per acre:

    e.  the dry cows at Platteville shall receive access to pasture at a grazing density that does not exceed five animals per acre;

    f.  the number of dairy animals at the Platteville operation shall be reduced in accordance with the pasture metric described above;

    g.  the calves born to animals at Platteville shall be permitted to remain at the operation until weaned and ready to be put on pasture, typically between 4 and 6 months of age; and

    h.  the certification for the AOD Woodward facility located in Greeley, Colorado. shall be removed from the OSP and shall not be renewed as of the date of the submission of the amended OSP.

8) AOD will address all other issues raised in the notice in its amended OSPs.

9) No milk or milk products produced after September 7, 2007, from the animals referred to in paragraph 7(a) shall be sold or represented as organic.

10) On or before September 7, 2007, AOD shall file an amended OSP for its Dublin, Texas. facility requiring that written agreements be entered into with all suppliers of animals for that facility no later than October 15, 2007. that will provide that all animals supplied under such written agreements have completed the transition to organic and are certified by an accredited certifying agent.

Compliance with Consent Agreement/One-Year Review

11) This agreement becomes effective on the last date shown below. and it incorporates by reference any applicable changes in the NOP or OFPA subsequently enacted.

12) Except as set forth in this agreement. AMS or AOD's certifying agents may take any action authorized by the NOP or OFPA with respect to AOD. and AOD retains all pre-existing rights under the NOP and OFPA.

2

13) The parties agree that, at any time within one year of the effective date of this agreement:

    a. AOD's certifying agent may determine that the terms of this agreement are not being reasonably complied with, and, upon such determination, shall serve upon AOD a notice pursuant to 7 C.F.R. § 205.662;

    b. AMS may determine that the terms of this agreement are not being reasonably complied with, and it may withdraw from this agreement and proceed on the original notice pursuant to 7 C.F.R. § 205.660; and

    c. AMS may serve notice of its intent to conduct an inspection of Platteville and AOD shall bear the reasonable costs of such inspection.

14) The parties agree that, at the conclusion of the one-year review period, AOD shall verify in writing to its certifying agent that it has implemented fully the operational changes set forth in this agreement, and has operated in compliance therewith since October 15, 2007.


Marc Peperzak
Chief Executive Officer
Aurora Organic Dairy

$8/23/07$
DATE


Barbara C. Robinson
Deputy Administrator
Transportation and Marketing Programs
United States Department of Agriculture

$8-23-07$
DATE

3